UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY BACA, et al., <br><br>                     Plaintiffs, <br><br>          v. <br><br> JOHN MUIR HEALTH, et al., <br><br>                     Defendants. | Case No.  21-cv-04898-JSW <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE** <br><br> Re: Dkt. No. 25, 37 |

United States District Court
Northern District of California

Now before the Court for consideration are the (1) motion for summary judgment filed by Defendants John Muir Health ("JMH") and Daman Mott ("Mott") (collectively, "Defendants") and (2) motion to strike filed by Plaintiffs Cody Baca ("Baca") and Leticia Baca ("L. Baca") (collectively, "Plaintiffs").  The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion to strike.

**BACKGROUND**

Baca is a certified nursing assistant who has worked for JMH since 2008.  (Dkt. No. 25-1, Declaration of Marcie Fitzsimmons ("Fitzsimmons Decl.") ¶ 2, Ex. 1 ("Baca Depo.") at 30:22-25; *id.* at 31:1-17.)  As a certified nursing assistant ("CNA"), Baca works with a registered nurse to provide patient care.  (*Id.* ¶ 3, Ex. 2.)

On October 25, 2017, a patient at JMH complained that a man had sexually assaulted him while he slept in his hospital bed.  (*Id.* ¶ 15, Ex. 14 ("Patient Transcript") at 35:4-11, 35:26-36:16; *id.* ¶ 12, Ex. 11.)  The patient called 911 to report the assault, and the dispatcher told him to notify the patient's supervisor or nurse.  (Patient Transcript at 32:15-33:10.)  The patient informed his

1   nightshift nurse and his daytime nurse about the alleged incident.  (Fitzsimmons Decl. ¶ 9, Ex. 8

2   ("Cheeks Depo.") at 30:4-31:5, 35:15-17, 40:3-13.)  The nurses informed Baca and brought him

3   into the conversation because Baca had been a part of the patient's nighttime care team.  (Baca

4   Depo. at 239:12-240:4.)  Baca and the nurses reported the patient's allegations to the evening

5   charge nurse.  (*Id.* at 239:12-20.)

6        Mott, the Medical and Surgical Services director, became aware of the patient's complaint

7   later that morning.  (Fitzsimmons Decl. ¶ 10, Ex. 9 ("Mott Depo.") at 45:8-12, 48:19-49:20.)  Mott

8   agreed to handle the complaint because the Risk and Quality Department was short-staffed.  (*Id.* at

9   51:1-22.)  Mott interviewed the patient in his room and found the patient credible.  (*Id.* at 75:4-

10  76:12.)  During the interview, the patient stated that he still wanted to file a formal police

11  complaint, and he dialed 911 again.  (*Id.*)  Mott asked the patient if he could speak to the

12  dispatcher and asked the dispatcher to transfer him to the non-emergency line.  (*Id.* at 76:17-77:3.)

13  Once transferred, Mott asked the police to send an officer and an interpreter to the hospital

14  because there was a patient that wanted to make a complaint of sexual assault.  (*Id.*)

15       After speaking with the police on the phone, Mott asked the patient to look at photographs

16  of JMH employees to see if he could identify the assailant or rule out any potential assailants.  (*Id.*

17  at 79:5-81:18-22.)  The patient agreed, and Mott showed the patient photographs of the JMH

18  employees who worked in the patient's unit.  (*Id.* at 84:8-85:17.)  Mott showed the patient the

19  photographs twice, and the patient did not identify anyone.  (*Id.* at 85:25-86:2, 87:8-88:5.)  Mott

20  then showed the patient a picture of Baca and told the patient that Baca was the CNA who cared

21  for him the prior night.  (*Id.* at 88:14-89:17.)  The patient replied, "That's him."  (*Id.*)

22       Shortly thereafter, police officers arrived at the hospital.  Officer Michael Watson ("Officer

23  Watson") interviewed the patient with assistance of a translator from the police department.  Mott

24  and Baca were not present for the patient's interview with the police.  (Baca Depo. at 209:10-16;

25  Mott Depo. at 73:25-74:8; 90:5-11.)  The police collected DNA swabs from the patient.  (Patient

26  Transcript at 42:17-18.)

27       Later that day, Officer Watson interviewed Baca.  (Baca Depo. at 60:12-61:1.)  Officer

28  Watson testified that he believed Baca had been identified to him as a suspect prior to his arrival at

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the hospital.  (Watson Depo. at 37:7-14.)  Baca asked Mott and another JMH supervisor, Deborah

2    Lamont, to be present for his police interview.  (*Id.* at 60:12-61:7.)  Baca informed Officer Watson

3    that he visited the patient's room four times during the night to check his vitals and bring him

4    water.  (Fitzsimmons Decl. ¶ 16, Ex. 15 ("Baca Transcript") at 61:7-9.)  When asked if touched

5    the patient's genitals, Baca denied doing so.  (Watson Depo. at 43:21-44:8.)  Officer Watson asked

6    to take a DNA swab from Baca and administer a polygraph and voice analyzer test, which Baca

7    declined.  (Baca Depo. at 104:9-105:8.)

8         That same day, Mott and Leslie Yewell, the Director of Employee and Labor Relations,

9    met with Baca.  (Baca Depo. at 66:24-67:12; Fitzsimmons Decl. ¶ 8, Ex. 7 ("Yewell Depo") at

10   20:9-13.)  They discussed the allegations against Baca, and Yewell asked Baca if he touched the

11   patient's genitals, which Baca denied.  (Yewell Depo at 37:21-38:2.)  Baca was surprised about

12   the accusations.  (*Id.*)  Yewell and Mott advised Baca they were putting him on paid

13   administrative leave while the patient's complaint was under review.  (Dkt. No. 25-2, Declaration

14   of Leslie Yewell ("Yewell Decl.") ¶ 4.)

15        JMH conducted an internal investigation of the incident.  As part of the internal

16   investigation of the incident, Mott discussed the incident with the patient's attending physician,

17   who advised Mott that it was highly likely that the patient was sensitive to medication, which

18   caused him to have a vivid dream that led the patient to believe that an assault had occurred.

19   (Mott Depo. at 133:3-16.)  Mott contacted Officer Watson to relay the attending physician's

20   thoughts.  (*Id.*; *see also* Fitzsimmons Decl., Ex. 11.)  JMH found insufficient information to

21   substantiate the allegations and concluded "it is more likely than not that the patient had a vivid

22   dream."  (Yewell Depo at 46:16-22; Baca Depo. at 97:8-14.)  After the internal investigation

23   concluded, JMH informed Baca he could return to work, and Baca returned for his next scheduled

24   shift on October 30, 2017.  (Baca Depo. at 80:25-81:2; Yewell Decl. ¶ 6.)

25        On February 14, 2018, the police informed JMH that someone else's DNA had been found

26   on the patient's genitals.  (Yewell Decl. ¶ 8.)  On February 15, 2018, the police executed a search

27   warrant for a DNA swab from Baca.  (Fitzsimmons Decl. ¶ 12, Ex. 11; Baca Depo. at 84:25-85:6.)

28   The results of the police DNA test reportedly showed Baca's DNA on the patient's genitals.

United States District Court
Northern District of California

1  (Fitzsimmons Decl. ¶ 21, Ex. 20 ("Kim Transcript") at 4:21-5:4, 9:23-10:17.)

2      On February 16, 2018, Baca married Plaintiff Leticia Baca ("L. Baca").  (Baca Depo. at

3  21:12-16.)

4      Around February 22, 2018, the District Attorney filed a criminal complaint against Baca in

5  Contra Costa County Superior Court.  (Baca Depo. at 144:2-15, 154:13-19.)  The criminal

6  complaint charged Baca with two counts of sexual battery and one count of first-degree burglary.

7  (Baca Transcript at 5:15-6:19.)  On February 23, 2018, JMH placed Baca on administrative leave

8  following his arrest.  (Baca Depo. at 93:1-6; Yewell Decl. ¶ 9.)  Baca requested and received a

9  copy of JMH's investigation report on February 23, 2018.  (Baca Depo. at 98:12-99:7.)  At that

10  time, Baca learned that Mott had shown the patient photos of JMH employees where the patient

11  identified Baca as the alleged perpetrator.  (*Id.* at 217:4-17, 218:11-219:13.)

12      On March 1, 2018, JMH's president sent a memo to JMH physicians, nurses, staff, and

13  volunteers, which stated:

14          This morning, the Walnut Creek Police Department issued a press
            release indicating that they arrested Cody Baca, a nursing assistant at
15          the Walnut Creek Medical Center, on sexual battery and burglary
            charges stemming from a patient complaint.
16
            The care and safety of our patients is always our highest priority and
17          we take all patient complaints very seriously.  We do not know if the
            charges will be proven true, but in light of the serious nature of the
18          allegations and the fact of the arrest, we have placed Mr. Baca on
            administrative leave.
19

20  (*Id.* at 130:11-131:15; Fitzsimmons Decl. ¶ 5, Ex. 4.)

21      Baca's criminal trial lasted six weeks from July 26, 2019 through September 4, 2019.  (*Id.*

22  at 123:16-21.)  The jury acquitted Baca of all charges.  (*Id.* at 128:2-4.)  JMH reinstated Baca on

23  October 1, 2019.  (*Id.* at 128:5-7; Yewell Decl. ¶ 10.)

24      On October 25, 2019, Plaintiffs filed this action in Contra Costa County Superior Court

25  alleging claims for negligence, intentional infliction of emotional distress, loss of consortium and

26  exemplary damages.  (Dkt. No. 1-1, Ex. A.)  On June 18, 2021, Plaintiffs filed an amended

27  complaint asserting causes of action for: (1) violation of 42 U.S.C. section 1983; (2) negligence;

28  (3) defamation; (4) loss of consortium; and (5) intentional infliction of emotional distress

1    ("IIED").  Defendants removed the action to federal court on June 25, 2021.  On May 25, 2022,

2    Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

3                                        **ANALYSIS**

4    **A.      The Court Denies Plaintiffs' Motion to Strike.**

5            On July 22, 2022, Plaintiffs filed a motion strike Exhibits 11[1], 14-15, and 17-20 from

6    Defendants' motion for summary judgment.  Exhibits 14, 15, 17-20 are transcripts of criminal trial

7    testimony from Baca, the patient, and police officers Watson, Maldonado, Kim, and Leonard.

8    Defendants cite to these transcripts in support of their motion for summary judgment.  Plaintiffs

9    move to strike the transcripts because Defendants did not produce the transcripts during discovery.

10   Plaintiffs assert they will be prejudiced if Defendants are permitted to rely on this undisclosed

11   evidence.  The Court finds Plaintiffs' arguments unpersuasive and denies the motion to strike.

12           First, Plaintiffs' motion is untimely.  Civil Local Rule 7-3(a) requires that any evidentiary

13   objections to a motion be contained within the opposition brief.  N.D. Civ. L.R. 7-3(a).  Local

14   Rule 7-3(d) states that "[o]nce a reply is filed, no additional memoranda, papers or letters may be

15   filed without prior Court approval."  N.D. Civ. L.R. 7-3(d).  Plaintiffs filed their opposition to

16   Defendants' summary judgment motion on June 30, 2022 and did not object to any of Defendants'

17   exhibits in their motion.  (*See* Dkt. No. 30.)  On July 22, 2022, more than two weeks after

18   Defendants filed their reply in support of summary judgment, Plaintiffs filed their motion seeking

19   to strike several of Defendants' exhibits.  Plaintiffs do not defend the timeliness of their motion to

20   strike, and the Court considers Plaintiffs' silence as a concession that their motion is untimely.

21           Even if Plaintiffs' motion was timely, they have not shown that Defendants failed in their

22   discovery obligations such that the exhibits should be stricken.  Federal Rule of Civil Procedure

23   26(a) requires a party to provide "a copy—or a description by category and location—of all

24   documents, electronically stored information, and tangible things that the disclosing party has in

25   its possession, custody or control and may use to support its claims or defenses, unless the use

26

27   _____
     [1] Exhibit 11 is a copy of the Walnut Creek Police Department's report regarding the incident,
28   produced by Plaintiffs.  (*See* Dkt. No. 25-1.)  This exhibit is not a trial transcript, and Plaintiffs
     offer no argument why it should be stricken.  The Court denies the motion to strike Exhibit 11.

United States District Court
Northern District of California

1   would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii).  Federal Rule of Civil

2   Procedure 37(c) states that if a party fails to provide information as required by Rule 26(a), the

3   party cannot use that information to supply evidence on a motion, at a hearing, or a trial, unless the

4   failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).

5   Defendants disclosed the criminal trial transcripts as documents that they may use to

6   defend against Plaintiffs' claims in their initial disclosures.  (Dkt. No. 38-1, Declaration of Marcie

7   Fitzsimmons iso Opp. to Motion to Strike ("Fitzsimmons Decl.") ¶ 2, Ex. 1.)  Moreover, although

8   Federal Rule of Civil Procedure 34(a)(1) permits a party to serve on any other party a request for

9   discoverable documents within that party's "possession, custody, or control," it is "well

10   established that discovery need not be required of documents of public record which are equally

11   accessible to all parties." *Sec. & Exch, Comm'n v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995-

12   96 (S.D.N.Y. 1973); *see also Keogh v. Pearson,* 35 F.R.D. 20, 23 (D.D.C.1964) (holding that

13   defendant was not required to turn over newspaper columns that were not "under the exclusive

14   control of defendant" but were "readily available" to both parties because the plaintiff "cannot

15   expect defendant to do his work for him").  Here, it is undisputed that the criminal trial transcripts

16   are public documents available to Plaintiffs by purchase from the Contra Costa County Superior

17   Court website, a fact which Defendants informed Plaintiffs of in their discovery responses.[2]  (*See*

18   Fitzsimmons Decl. ¶ 4, Ex. 3.)

19   Moreover, any failure to provide the transcripts to Plaintiffs was "harmless."  *See* Fed. R.

20   Civ. P. 37(c)(1).  Plaintiffs cannot claim that they were unaware of the criminal trial transcripts or

21   blindsided by the information contained in the transcripts because they pertain to Plaintiff Baca's

22   own criminal trial.  Plaintiffs had sufficient time and opportunity to obtain the transcripts

23   themselves but chose not to do so.

24   For these reasons, Plaintiffs' motion to strike is DENIED.

25   **B.      Defendants' Objections to Plaintiffs' Evidence.**

26   Defendants object to evidence Plaintiffs submit in support of their opposition to summary

27

28   ────────────────

[2] There is also no indication that Plaintiffs are unable to pay for the transcripts themselves.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   judgment.  Defendants first contend that Plaintiffs assert several facts that are contradicted by

2   sworn testimony and thus, the Court should not consider these facts in deciding the motion.

3   Defendants challenge the following assertions of facts in Plaintiffs' opposition: (1) Mott wanted

4   "someone to be named" when he showed the patient the photographs of JMH employees (Opp. at

5   7:7-19); (2) Mott was "informally reprimanded" following the incident (Opp. at 11:10-21); and (3)

6   Mott now admits he was wrong to show the patient the photographs of JMH employees.  (Opp. at

7   15.)

8           The Court finds the cited testimony does not support Plaintiffs' assertion.  Mott's

9   deposition testimony directly contradicts the first two assertions.  (*See* Mott Depo at 86:22-6,

10   34:23-25.)  With regard to the third assertion, Plaintiffs misconstrue the meaning of Mott's

11   testimony.  Accordingly, the Court sustains Defendants' objections to these assertions of facts.

12   *See Thompson v. Williams*, 211 Cal.App.3d 566, 574 (1989) ("The assertion of facts contrary to

13   prior testimony does not constitute 'substantial evidence of the existence of a triable issue of

14   fact.'") (quoting *D'Amico v. Board of Med. Examiners*, 11 Cal. 3d 1, 21-22 (1974).

15           Defendants also contend that Plaintiffs' assertions of fact based on the Midas Report are

16   contradicted by the evidence.  To the extent Plaintiffs assert that the Midas Report establishes that

17   Mott offered Baca an attorney and that Mott was the only person involved in authoring the Midas

18   Report, those assertions are contradicted by Mott's testimony and the Midas Report.  The Court

19   sustains Defendants' objections and will not consider these assertions as facts to the extent they

20   contradict prior sworn testimony.

21           Defendants also object to Exhibit 15 of the Nold Declaration, which is a collection of

22   "news media reports that appear when you search for 'Cody Baca'."  (Dkt. No. 30-1, Declaration

23   of Melissa Nold ("Nold Decl.") ¶ 16.)  Defendants object on the grounds that the exhibit has not

24   been authenticated and is inadmissible hearsay.  The Court overrules the objection as moot

25   because the Court did not rely on these exhibits in considering the motion.

26           Defendants also object to Exhibit 17 of the Nold Declaration.  Exhibit 17 is an "Unusual

27   Occurrence Report" JMH submitted to the California Department of Public Heath regarding the

28   incident on February 27, 2018.  (Nold Decl. ¶ 18.)  Defendants argue the exhibit is improperly

7

1    authenticated and is inadmissible hearsay because it is an out-of-court statement offered to prove

2    the truth of the matter asserted:  that it contains details that do not appear in other documents.

3    *Mahone v. Lehman*, 347 F.3d 1170, 1173 (9th Cir. 2003) (an out-of-court statement is hearsay and

4    inadmissible when the inference the proponent wants the trier of fact to draw from the statement

5    depends on its truth).  The Court agrees; the document is not properly authenticated and is

6    inadmissible hearsay.  The Court sustains the objection to Exhibit 17.

7    **C.      Legal Standard Applicable to Motion for Summary Judgment.**

8          "A party may move for summary judgment, identifying each claim or defense . . . on

9    which summary judgment is sought."  Fed. R. Civ. P. 56(a).  A principal purpose of the summary

10   judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v.*

11   *Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment, or partial summary judgment, is

12   proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

13   is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may not weigh

14   evidence or make determinations of credibility.  Rather, "[t]he evidence of the non-movant is to be

15   believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby*,

16   477 U.S. 242, 255 (1986).

17         The party moving for summary judgment bears the initial burden of identifying those

18   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

19   of material fact.  *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c).  An issue of fact is

20   "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-

21   moving party.  *Anderson*, 477 U.S. at 248-49.  A fact is "material" if it may affect the outcome of

22   the case.  *Id.* at 248.  If the party moving for summary judgment does not have the ultimate burden

23   of persuasion at trial, the party must produce evidence which either negates an essential element of

24   the non-moving party's claims or show that the non-moving party does not have enough evidence

25   of an essential element to carry its ultimate burden of persuasion at trial.  *Nissan Fire & Marine*

26   *Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

27         Once the moving party meets its initial burden, the non-moving party must "identify with

28   reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91

United States District Court
Northern District of California

8

F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards*, 55 F.3d at 251); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**D.  Defendants are Entitled to Summary Judgment on the Defamation Claim.**

Defendants argue that Baca's defamation claim fails as a matter of law because it is untimely, and even if the claim was timely, it fails because the allegedly defamatory statements are true. Defendants also argue Baca's defamation claim fails because the statements at issue are protected by privilege.

Plaintiffs fail to address this claim or respond to Defendants' arguments in their opposition. Thus, the Court considers the claim abandoned and grants summary judgment in favor of Defendants as to this claim. *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1115 (N.D. Cal. 2010) (construing plaintiff's failure to address issue in opposition brief as a concession that she could not proceed on the claim and granting summary judgment in favor of defendants); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.") (citing *Locricchio v. Office of U.S. Trustee*, 313 Fed. Appx. 51, 52 (9th Cir. 2009)).

**E.  Defendants are Entitled to Summary Judgment on the Section 1983 Claim.**

Defendants argue they are entitled to summary judgment with respect to Baca's Section 1983 claim because it is untimely and even if it were timely, Plaintiffs cannot show that Mott acted under the color of state law. Defendants further argue that the claim fails as a matter of law

United States District Court
Northern District of California

1   because the Sixth Amendment right to counsel, which is the basis for Plaintiff's Section 1983

2   claim, does not apply before the initiation of criminal proceedings.

3        Plaintiffs fail to address this claim or respond to Defendants' arguments in their

4   opposition.  Thus, the Court considers the claims abandoned and grants summary judgment in

5   favor of Defendants as to this claim.  *Bolbol*, 754 F. Supp. 2d at 1115; *Conservation Force*, 677 F.

6   Supp. 2d at 1211.

7   **F.    Defendants are Entitled to Summary Judgment on Baca's Negligence Claim.**

8        Defendants argue they are entitled to summary judgment on the negligence claim because

9   Plaintiffs cannot establish the elements of breach or causation.  The elements of a cause of action

10  for negligence are (1) a legal duty to use due care, (2) a breach of that duty; and (3) the breach is

11  the proximate or legal cause of the resulting injury.  *Ladd v. County of San Mateo*, 12 Cal.4th 913,

12  917 (1996).  Reasonable care typically does not mean preventing any and all harm; it means

13  exercising reasonably prudent caution under the circumstances.  *Coyle v. Historic Mission Inn*

14  *Corporation*, 24 Cal.App.5th 627, 643 (2018).  "Breach is the failure to meet the standard of

15  care."  *Id*.  The elements of breach and causation are ordinarily questions of fact for the jury's

16  determination.  *Johnson v. Prasad*, 224 Cal. App. 4th 74, 83 (2014).

17       **1.    Plaintiffs fail to establish breach.**

18       The California Supreme Court set forth the governing standard of care for workplace

19  investigations in *Cotran v. Rollings Hudig Hall Intern, Inc.*, 17 Cal.4th 93, 109.  The Court held

20  that the critical question was whether the employer acted "in good faith and follow[ed] an

21  investigation that was appropriate under the circumstances."  *Id*.  As a result, courts are "unwilling

22  to compel employers to undertake a precise type of investigation as long as the process is

23  inherently fair."  *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 439 (2007) (noting that

24  "flexibility is the signature lesson from *Cotran*.").

25       The Court finds the undisputed evidence shows that Mott and JMH undertook a good faith

26  investigation that was appropriate under the circumstances.  After the patient alerted his care team

27  of the alleged sexual assault, Mott spoke with the patient to determine if the patient's complaint

28  was credible.  The patient advised Mott that he wished to file a formal police complaint, and Mott

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1  helped him call the police.  Finding the patient's complaint credible, Mott attempted to find out if

2  any JMH employee was involved in the alleged assault by showing the patients photographs of the

3  JMH employees in that unit.  Mott and Yewell met with Baca to inform him of the patient's

4  allegations and provided Baca with an opportunity to respond to the patient's allegations.  JMH

5  put Baca on leave pending the investigation, and after JMH determined the patient's complaint

6  was unsubstantiated, it invited Baca to return to work.

7          The Court finds Defendants have submitted sufficient evidence to establish the

8  investigation JMH and Mott undertook was reasonable in the context of a patient accusing a

9  hospital employee of sexual assault.  It was reasonable for Mott to meet with the patient, contact

10  the police, and try to find out what, if any, JMH employee was involved in the incident.  Plaintiffs

11  criticize aspects of the investigation including the fact that Mott's actions in showing the patient

12  the photos is not specifically provided for by JMH policies.  But Plaintiffs' criticism is insufficient

13  to permit the Court to infer that the investigation was unreasonable or that Mott acted in bad faith.

14  *See Jameson v. Pac. Gas & Elec. Co.*, 16 Cal. App. 5th 901, 912 (2017) ("Any investigation can

15  be criticized, and a plaintiff can always assert that more should have been done, or done

16  differently.").  Plaintiffs identify no other evidence to support his position.

17          Defendants have submitted evidence establishing that they undertook a reasonable

18  investigation in good faith.  Although the question of breach is usually a fact issue for the jury,

19  Plaintiffs have failed to provide evidence that a triable issue exists such that a jury could conclude

20  that Mott and JMH's investigation was not reasonable under the circumstances.  *See Jameson*, 16

21  Cal. App. 5th at 912 (summary judgment appropriate where defendants undertook an adequate

22  investigation and the plaintiff failed to present sufficient evidence to establish a triable issue that

23  the investigation was procedurally inadequate or biased).

24          **2.      Plaintiffs cannot establish the element of causation.**

25          Causation requires a connection between the defendant's breach and the plaintiff's injury.

26  *Coyle*, 24 Cal.App.5th at 645.  To establish causation, a plaintiff must prove that the defendant's

27  conduct was a "substantial factor" in bringing about his or her harm.  *Bowman v. Wyatt*, 186 Cal.

28  App. 4th 286, 312 (2010), *as modified on denial of reh'g* (July 28, 2010).  "[C]onduct is not a

1    substantial factor in causing harm if the same harm would have occurred without that conduct."

2    *Lawrence v. La Jolla Beach & Tennis Club, Inc.*, 231 Cal. App. 4th 11, 33 (citing *Yanez v.*

3    *Plummer*, 221 Cal. App. 4th 180, 187 (2013)).  Where there is evidence that the harm could have

4    occurred even in the absence of the defendant's negligence, "proof of causation cannot be based

5    on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion

6    unsupported by any real evidence...."  *Padilla v. Rodas*, 160 Cal. App. 4th 742, 752 (2008).

7    "Although causation is a question of fact, it may be decided as a matter of law if, under undisputed

8    facts, reasonable minds could not differ."  *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506

9    (9th Cir. 1994) (citing *Onciano v. Golden Palace Restaurant,* 219 Cal.App.3d 385, 394-95

10   (1990)).

11       Plaintiffs argue Mott informed Officer Watson that the patient had identified Baca as his

12   assailant.  Baca contends that because of Mott's statement to Officer Watson, the police did not

13   investigate other possible suspects, and but for Mott's statement, Baca would not have been

14   identified as a suspect in the police investigation.

15       The undisputed evidence contradicts Baca's argument.  It is undisputed that the patient

16   reported to the police that he was sexually assaulted by a male employee.  The police investigated

17   the complaint, and as part of the investigation took a DNA swab of the patient's genitals.  The

18   results from the swab showed DNA that did not belong to the patient.  It is undisputed that Baca

19   was the only male assigned to patient's care team at the time of alleged assault.  Given that Baca

20   was the sole male on the care team, he would have been identified as a suspect by the police

21   regardless of any investigation by Mott or JMH.  Indeed, Officer Watson testified at his deposition

22   that the information provided by Mott was only one of several factors that caused him to identify

23   Baca as a suspect.  (Watson Depo. at 32:19-33:14; 51:16-52:18.)  Moreover, it is undisputed that

24   JMH and Mott played no role in the District Attorney's decision to pursue criminal charges

25   against Baca after the DNA results from the patient's genital swab matched Baca's DNA.

26       Defendants have proffered sufficient evidence to show that the harm to Baca would have

27   occurred even in the absence of Mott and JMH's investigation.  Plaintiffs' speculative argument

28   that Baca's injury would not have occurred but for Mott's statements to the police is unsupported

*United States District Court*
*Northern District of California*

12

by real evidence and is insufficient to establish proof of causation.  In the absence of any such evidence of causation, the Court finds the trier of fact could not differ on the outcome of causation, and Defendants are entitled to summary judgment on this issue.  *Iolab Corp*, 15 F.3d at 1506 n.4.

Because the Court finds Plaintiffs fail to show the existence of a genuine dispute of material fact as to the elements of breach and causation, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' claim for negligence.  Thus, the Court need not reach the question of whether workers' compensation exclusivity bars this claim.

**G.      Defendants are Entitled to Summary Judgment on the IIED Claim.**

Defendants argue that Baca's IIED claim is barred by worker's compensation exclusivity. Cal. Labor Code § 3602.  The Workers' Compensation Act ("WCA") is the exclusive remedy for employees suffering physical or mental injuries arising out of the course of employment. *Shoemaker v. Myers*, 52 Cal. 3d 1, 7, 15 (1990).  The WCA's exclusive remedy provisions institute a "compensation bargain" between employers and employees governing claims for such injuries.  *Id.* at 16.  In this bargain, employees receive faster and more certain awards of compensation in exchange for giving up the more varied and substantial damages available at common law.  *Id.*

The California Supreme Court has held that claims of IIED arising out of the course of employment are generally preempted by the workers' compensation law.  *Livitsanos v. Supreior Court*, 2 Cal. 4th 744, 754-55 (1992).  Such IIED claims are preempted even where the emotional distress did not result in any physical injury or compensable disability.  *Id.* at 755-756 ("[T]here is no merit to plaintiff's assertion that purely emotional injuries lie outside the scope of the workers' compensation system.").  However, IIED claims are not preempted if the employer's alleged misconduct (1) "contravenes fundamental public policy," or (2) "exceeds the risk inherent in the employment relationship."  *Id.* at 754.

To determine whether conduct is outside the normal employment relationship, the court considers whether "the alleged acts, bereft of their motivation, can ever be viewed as a normal aspect of the employer relationship."  *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24

1    Cal. 4th 800, 822 (2001).  An employer's conduct does not "exceed the risk inherent in the

2    employment relationship" when it consists of "actions which are a normal part of the employment

3    relationship, such as demotions, promotions, criticism of work practices, and frictions in

4    negotiations as to grievances." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160

5    (1987).  By contrast, "conduct in which an employer steps out of its 'proper role' as an employer

6    or conduct of 'questionable relationship to the employment'…is not encompassed within the

7    compensation bargain and is not subject to the exclusivity rule." *Singh v. Southland Stone, U.S.A.,*

8    *Inc.*, 186 Cal. App. 4th 338, 367 (2010).  For example, California courts have found claims of

9    false imprisonment and sexual harassment are not within the compensation bargain and thus not

10   subject to exclusivity.  *See Fermino v. Fedco, Inc.* 7 Cal. 4th 701, 723 (1994) (false imprisonment

11   of employee during theft investigation not within scope of the exclusivity rule because "such

12   action cannot be said to be a normal aspect of the employment relationship"); *Hart v. Nat'l Mortg.*

13   *& Land Co.* 189 Cal. App. 3d 1420, 1431 (1987) (exclusivity doctrine not applicable to intentional

14   infliction of emotional distress claim based on sexual harassment).

15          Here, the challenged conduct—Mott and JMH's investigation into accusations of sexual

16   assault by a patient against a hospital employee—is a normal part of the employment relationship

17   between a hospital and its employees.  Additionally, Mott did not step out of his proper role or

18   engage in conduct of questionable relationship to the employment in seeking to investigate and

19   identify the JMH employee, if any, involved in the alleged assault.

20          Baca nevertheless argues that the conduct here was not an inherent risk of employment

21   because Mott framed him and knowingly lied to the police.  As an initial matter, Baca's assertions

22   are unsupported by evidence.  Regardless, even if Mott had intentionally acted to frame Baca,

23   workers' compensations would still be the exclusive remedy for his IIED claim.  *Miklosy v.*

24   *Regents of Univ. of California*, 44 Cal. 4th 876, 902 (2008) ("Even if such conduct may be

25   characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers'

26   compensation exclusivity provisions.").[3]

27   _____

28   [3] The exception for conduct that "contravenes fundamental public policy" is aimed at permitting a
     *Tameny* action for wrongful termination to proceed despite the workers' compensation exclusivity

1    The Court finds that Baca's IIEED claim fails because it within the exclusive remedy

2    provisions of the California Workers' Compensation Act.

3    Additionally, a necessary element of a claim for intentional infliction of emotional distress

4    is outrageous conduct by the defendant.  "Outrageous conduct" is that which is so extreme as to

5    exceed all bounds of that usually tolerated in a civilized society.  *Corales v. Bennett*, 567 F.3d 554

6    (2009).  Baca's unfounded assertions that Mott and JMH engaged in extreme conduct are

7    unsupported by the evidence in the record.

8    Baca also fails to establish other essential elements of claim for IIED.  *Hughes v. Pair*, 46

9    Cal.4th 1035, 1050 (2009) (IIED claim requires proving (1) extreme and outrageous conduct by

10   defendants; (2) intention to cause or reckless disregard of the probability of causing emotional

11   distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional

12   distress).  Baca provides no evidence establishing that either Mott or JMH acted with the intent to

13   cause or reckless disregard for the probability of causing emotional distress.  And as discussed

14   above, Baca cannot show that JMH and Mott were the actual and proximate cause of his damage.

15   Thus, Baca's IIED claims fails on the merits.

16   **H.      The Loss of Consortium Claim Fails.**

17   To prove a claim for loss of consortium, L. Baca must prove: (1) her spouse was injured by

18   someone else's negligence or other wrongful act; (2) she and Baca were married at the time of the

19   injury; (3) she suffered the loss of Baca's consortium; and (4) such loss resulted from Defendants'

20   wrongful act.  *Vanhooser v. Superior Court*, 206 Cal.App.4th 921, 927 (2012).

21   Because Baca's negligence and IIED claims fail, L. Baca's loss of consortium claim fails

22   too.  *Hahn v. Mirda*, 147 Cal.App.4th 740, 746 n.2 (2007) ("A cause of action for loss of

23   consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a

---

25   rule.  *Miklosy*, 44 Cal. 4th at 902-03.  As a result, courts have found that workers' compensation
     exclusivity preempts IIED claims "even if they are based on conduct that allegedly violates a
26   fundamental public policy, because the…public policy exception operates only to permit *Tameny*
     actions for wrongful termination…"  *Langevin v. Fed. Express Corp.*, No. CV 14-08105 MMM
27   FFMX, 2015 WL 1006367, at *10 (C.D. Cal. Mar. 6, 2015) (collecting cases); *see also Yau v.
     Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161-62 (2014) (distinguishing cases that found
28   IIED claims were not barred because the cases were decided before *Miklosy*).  Thus, the public
     policy exception to workers' compensation exclusivity does not apply to Baca's IIED claim.

United States District Court
Northern District of California

1  spouse.").

2      Additionally, the loss of consortium claim fails because Baca and L. Baca were not

3  married at the time of injury, which is fatal to the loss of consortium claim. *Elden v. Sheldon*, 46

4  Cal. 3d 267, 278 (1988), *as modified* (Sept. 19, 1988) ("[T]he right to recover for loss of

5  consortium is founded on the relationship of marriage, and absent such a relationship the right

6  does not exist."). Plaintiffs were married on February 16, 2018. The alleged sexual assault

7  occurred on October 25, 2017, prior to their marriage. The Court is not persuaded by Plaintiffs'

8  argument that the "majority of Plaintiffs' injuries occurred after the arrest" when they were

9  married. The alleged tortious incident giving rise to this action is the alleged sexual assault and

10 Mott and JMH's investigation thereof, and it is undisputed that Baca and L. Baca were not married

11 at that time.

12     For these reasons, Plaintiffs' claim for loss of consortium fails as a matter of law. The

13 Court need not reach the question of whether workers' compensation exclusivity bars this claim.

14                                    **CONCLUSION**

15     For the foregoing reasons, the Court GRANTS Defendants' motion for summary

16 judgment. The Court DENIES Plaintiffs' motion to strike.

17     A separate judgment shall issue, and the Clerk shall close the file.

18     **IT IS SO ORDERED.**

19 Dated: November 16, 2022

20 _____

21 JEFFREY S. WHITE
   United States District Judge

22

23

24

25

26

27

28

United States District Court
Northern District of California